GABLES RACING ASSOCIATION, INC., v. ROBERT PERSKY, NATOR HOLDING COMPANY, a corporation, LANGFORD HOLDING COMPANY, a corporation, A. H. RAMSEY & SONS, INC., a corporation, and PHINEAS E. PAIST.

156 So. 392.

Division A.

Opinion Filed August 2, 1934.

78

*Chappell, Brown & Allen,* for Appellant;
*Evans, Mershon & Sawyer, Herbert S. Sawyer,* and L. L. *Robinson,* for Appellees.

ELLIS, J.—Gables Racing Association on July 20, 1931, executed and delivered to Nator Holding Company a promissory note in the sum of fifteen thousand dollars, payable to the order of Nator Holding Company on or before May 1, 1932. The maker in order to secure the payment of the note executed and delivered to the payee a mortgage on certain lands located in Dade County, Florida.

On June 19, 1931, the Nator Holding Company owed Simon Persky nineteen thousand nine hundred dollars and as evidence executed its promissory note to Persky payable to his order in that sum on or before May 1, 1932. To secure the payment of that note the Nator Holding Company assigned to Simon Persky the Gables Racing Association note and mortgage to the Nator Holding Company. The property covered by the mortgage is known locally as the "South Miami Kennel Club track."

Sometime after the above recited transaction Simon Persky transferred by indorsement to Robert Persky the nineteen thousand nine hundred dollars note from Nator Holding Company to Simon Persky, who at the same time assigned, transferred and set over to Robert the Gables Racing Association note and mortgage which had been pledged with Simon Persky by the Nator Holding Company to secure its indebtedness to Simon Persky.

Now on May the 1, 1932, the due date of both notes, the one from Gables Racing Association to Nator Holding Company for fifteen thousand dollars and the one from Nator Holding Company to Simon Persky for nineteen thousand nine hundred dollars, neither had been paid. So that on May 3, 1932, Robert Persky exhibited his bill in the Circuit Court for Dade County to enforce the mortgage lien executed by the Gables Racing Association to the Nator Holding Company. By leave an amended bill was filed in July following. The bill alleges that the complainant is

the owner and holder of both notes; that the Gables Racing Association is in possession of the mortgaged property. The defendants named in the bill were the Gables Racing Association, mortgagor, the Nator Holding Company, Mortgagee, Langford Holding Company, A. H. Ramsey & Sons Inc., a corporation, and Phineas E. Paist, who were alleged to have or claim some interest or right in the property mortgaged. It was also alleged that neither the principal nor interest on either note has been paid.

The prayers of the bill were that an accounting be taken of the amount due by the Gables Racing Association on the note executed by it; that an allowance be made for reasonable attorneys' fees provided to be paid by the terms of the mortgage; that the complainant be decreed to have a lien on the property mortgaged for the principal, interest and solicitors' fees; that the Gables Racing Association be decreed to pay the amount found to be due on that account; that the defendants be barred annd foreclosed from all equity of redemption in the mortgaged property; that an accounting be taken of the amount due by the Nator Holding Company on account of its note to Simon Persky; that the complainant be decreed to have a lien on the note and mortgage from Gables Racing Association to Nator Holding Company for the payment of the amount due on the note from Nator Holding Company to Simon Persky; that the Nator Holding Company be required to pay to the complainant the amount found to be due by it upon its promissory note and in default thereof the complainant may be allowed by the decree to either sell the note and mortgage, or upon the sale of the mortgaged property to apply the proceeds of the sale upon the note from Gables Racing Association to Nator Holding Company and that in case of the sale of the note and mortgage, or the sale of the mortgaged property to satisfy the indebtedness of the Nator

Holding Company to the complainant that the defendants be barred and foreclosed of and from all rights of interests either in the mortgaged property or the proceeds of the sale. There was also a prayer for general relief.

The Gables Racing Association, Inc., and the Nator Holding Company and Phineas E. Paist moved separately to dismiss the bill. Those motions were overruled. They challenged the sufficiency of the bill as to the legal ownership by the complainant of the Gables Racing Association note and mortgage and the right of the complainant to maintain the foreclosure proceedings. It was also attacked for multifariousness and that the bill showed that the complainant was in court with "unclean hands." The three defendants moving to dismiss were ordered to plead, answer or demur to the amended bill on or before September 15, 1932.

The complainant moved the court for an order requiring the Gables Racing Association to produce certain books, papers and records for the inspection of the plaintiff at the office of Chappell, Brown & Allen, Solicitors for the defendants.

On September 14th the Gables Racing Association, Inc., interposed its answer. That answer denied the execution by the defendant of the note and mortgage to Nator Holding Company and the allegations showing maturity of the debt, breach of covenants and necessity for employing counsel. The defense upon which the Corporation seemed to rely in its answer consists of two propositions; first, that the note and mortgage were signed by "Gables Racing Association" while the true name of the defendant being sued is "Gables Racing Association, Inc." The answer admits, however, that the defendant is in possession of the property mortgaged and denied the execution of the note and mortgage to Nator Holding Company. Second, that Simon Persky did not reduce the note and mortgage to "ownership

and possession either before or after the maturity of the promissory note"; that he assigned it as his own to his son, Robert Persky, the complainant, before the debt "alleged to have been secured by the said collateral became due and payable, and without the authority of the person depositing the same," all of which the complainant had notice and therefore became "a party to the said illegal assignment, with notice of its illegality and infirmity," which circumstance it is alleged shows a lack of "clean hands" on complainant's part.

The motion to require the Gables Racing Association to produce the books and papers was granted by an order dated September 19, 1932. Two days later the "Gables Racing Assoc., Inc.," appealed from the order of August 29, 1932, overruling the motion to dismiss the bill, and from the order of September 19th requiring the defendant, Gables Racing Association, to produce its books and papers.

If the "Gables Racing Assoc., Inc.," is not the same corporation as the "Gables Racing Association" named as defendant in the case, the appeal should be dismissed as the appellant has no interest in the controversy and is not a party to it. We deem this point, however, to be waived as the appellant during the entire proceedings definitely made no defense based upon the ground that the Gables Racing Association was a separate and distinct corporation from the Gables Racing Assoc., Inc., in which name the defense was interposed and the appeal taken.

The controlling question presented by this appeal is the right of a pledgee to foreclose a mortgage deposited with him as collateral security for the payment of a debt due to him by the mortgagee, and if such right exists may his assignee, who takes the collateral security to secure the payment of a debt due to him by the pledgee, maintain his bill

to enforce the lien upon the maturity and nonpayment of both debts.

This question we answer in the affirmative.

The principle pervading a transaction involving a pledge of property as security for the payment of a debt is that the transaction vests in the pledgee the right to the property so far as is necessary to secure the payment of the debt.

While a pledgee of commercial paper held as collateral security cannot sell such paper, in the absence of a special power of sale in the contract, he may bring suit thereon although the debt secured by such pledge is not at the time due, but he has, of course, no right to apply the proceeds to the payment of the debt until after default in the payment of such debt by the pledgor. See 21 R. C. L. p. 668.

The indorsement and delivery of negotiable paper as collateral security before maturity passes the legal title to the holder, with power to collect by suit or otherwise, subject to the rights of the indorser as to the application of the proceeds, and thereby the right of the pledgor to recover on such paper is necessarily suspended. See Hall v. Paige, 4 Ga. 428, 48 Am. Dec. 235; St. Paul Nat. Bank v. Cannon, 46 Minn. 95, 48 N. W. Rep. 526, 24 A. S. R. 189; Lamberton, v. Windom, 12 Minn. 232, 90 Am. Dec. 301; Yellowstone Nat. Bank of Billings v. Gagnon, 19 Mont. 402, 48 Pac. Rep. 762, 61 A. S. R. 520, 44 L. R. A. 243; Bank v. Mann, 94 Tenn. 17, 27 S. W. Rep. 1015, 27 L. R. A. 565; Denmark v. Avinger (Tex. Civ. App.), 257 S. W. Rep. 970; 21 R. C. L. 668-684.

The general rule that one holding commercial paper as collateral security cannot, except in perhaps very extreme cases, compromise with the maker of the collateral and surrender the same for less than the amount due thereon, does not in anywise conflict with the rule above announced. On

the question of compromising with the maker of collateral it may be interesting to read a few of the following cases: Hallack Lumber & Mfg. Co. v. Gray, 19 Colo. 149, 34 Pac. Rep. 1000; Fisher v. George S. Jones Co., 108 Ga. 490, 34 S. E. Rep. 172; Union Trust Company v. Rigdon, 93 Ill. 458; Rhomberg v. Avenarius, 135 Iowa 176, 112 N. W. Rep. 548; Stevens v. Wiley, 165 Mass. 402, 43 N. E. Rep. 177; Fairbanks v. Sargent, 117 N. Y. 320, 22 N. E. Rep. 1039, 6 L. R. A. 475; McLemore v. Hawkins, 46 Miss. 715.

The general rule has been recognized and applied in this State. See Camp Lumber Co. v. State Sav. Bank, 59 Fla. 455, 51 South. Rep. 543; Brown v. First Nat. Bank, 86 Fla. 198, 97 South. Rep. 351; Withers v. Sandlin, 36 Fla. 619, 18 South. Rep. 856; McCallum v. Driggs, 35 Fla. 277, 17 South. Rep. 407. See also Erie Transfer Co. v. J. Cutler Iron Works, 47 Fed. Rep. (2 Series) 1078; McNary v. Farmers Nat. Bank, 33 Okl. 1, 124 Pac. Rep. 286, 41 L. R. A. (N. S.) 1009.

The Gables Racing Association note to Nator Holding Company bears a special indorsement to Simon Persky, who by similar endorsement transferred it to complainant.

In Gregory v. McNealy, 12 Fla. 578, this Court, speaking through Mr. Justice WESTCOTT, quoted approvingly the law as stated in Livingston v. Clinton, 3 Johnson's Cases, 264; " 'If a note is endorsed in blank, the court never inquires into the right of the plaintiff, whether he sues *in his own right* or as trustee.' "

In this case it would not have been necessary to make the Nator Holding Company a party defendant if no relief had been prayed against it. See Springfield Co. v. Ely, 44 Fla. 319, 32 South. Rep. 892.

The remedy provided by statute, Section 6931 C. G. L., 1927, is not exclusive as the pledgee may by foreclosure proceedings enforce the lien of the mortgage to the end

that the debt which the mortgage was given to secure may be collected. In such proceeding the pledgor is secured in all his rights, has his day in court, and is protected against any unfair or unjust disposition of his property, and secures an accounting of the proceeds of the sale to his debt.

The decree of the Chancellor overruling the motion to dismiss the bill was without error and is affirmed.

On the propriety of ordering the production of the books and papers of the Company based on the motion of counsel for complainant, we are of the opinion that the Chancellor did not abuse his discretion to the point of imposing an unnecessary hardship upon the defendant.

The power exists in the Chancellor under Section 49, Chapter 14658, Acts 1931, known as the Chancery Act.

While many more books, papers and documents were required to be produced than the pleadings in the case seemed to require, and the order might have been with more propriety limited to such necessary papers and books as were likely to give some information to the court upon the question presented by the pleadings, we cannot say that the Chancellor abused his discretion to the point of invalidating the order. We think the order should be modified, however, by limiting it to the production of such books and papers as are likely to enlighten the court on the question of identity of the Corporation sued with that of the "Gables Racing Assoc. Inc." and the authentication of the note and mortgage delivered to the Nator Holding Company.

See discussion of the subject by Mr. Chief Justice DAVIS in Therrell v. Howland, 108 Fla. 299, 146 South. Rep. 203.

The order overruling the motion to dismiss the bill is affirmed, and the order to the Gables Racing Association to produce books and papers is modified with directions to the Chancellor to so amend his order as to conform to the view expressed herein.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.