GABLES RACING ASSOC., INC., a Corporation Under the Laws of Florida, v. ROBERT PERSKY.

6 So. (2nd) 257
Division B
Opinion Filed October 25, 1940
On Rehearing En Banc May 16, 1941
Rehearing Denied March 2, 1942

628

*S. P. Robineau, Carl L. Brown* and *Garland M. Budd,* for Appellant;

*Evans, Mershon & Sawyer, M. L. Mershon* and *W. C. Mehrtens,* for Appellee.

PER CURIAM.—On May 3, 1932, Robert Persky filed a bill of complaint in the Circuit Court of Dade County, Florida, to enforce a mortgage lien against the Gables Racing Assoc., Inc. The mortgage was dated July 20, 1931, and given to secure the payment of a promissory note in the sum of $15,000.00 payable to Nator Holding Company, and the note fell due on or before May 1, 1932. The mortgage covered approximately twenty-five acres of land located in Dade County, Florida. On June 19, 1931, the Nator Holding Company was indebted to Simon Persky in the sum of $19,900.00 and executed its promissory note as evidence thereof and the same was payable to Simon Persky and became due on or before May 1, 1932. To secure the payment of the said indebtedness in the sum of $19,900.00 due to Simon Persky the Nator Holding Company assigned to him the Gables Racing Assoc., Inc., note and mortgage to the Nator Holding Company.

The note in the sum of $19,900.00 from the Nator Holding Company to Simon Persky was transferred by endorsement to Robert Persky, together with the note and mortgage given by Gables Racing Assoc., Inc., to Nator Holding Company to secure its indebtedness to Simon Persky, and each of said instruments were transferred or endorsed to Robert Persky before maturity.

The bill to enforce the mortgage lien filed under date of May 3, 1932, by Robert Persky was by an order of the Court amended. The Gables Racing

Assoc., Inc., and the Nator Holding Company filed separate motions to dismiss the amended bill of complaint and thereby challenged the sufficiency of the amended bill as to the ownership of Robert Persky of the Gables Racing Assoc. note and mortgage and his right to maintain foreclosure proceedings. There was a motion to require the Gables Racing Assoc. to produce certain books and papers, and from an order overruling and denying the motion to dismiss the amended bill and the order requiring the Gables Racing Assoc. to produce certain books and papers alleged to be material to the litigation, an appeal was taken to this Court, and the order entered by the lower court overruling the motion to dismiss the amended bill of complaint was affirmed and the order requiring the Gables Racing Assoc. to produce certain books and papers was modified. See Gables Racing Assoc., Inc., v. Persky, *et al.,* 116 Fla. 77, 156 So. 392.

The Gables Racing Assoc., after the return of the mandate to the Circuit Court of Dade County, filed its answer to the amended bill of complaint in which it denied that the mortgage from the Gables Racing Assoc. to the Nator Holding Company, and transferred and endorsed to Robert Persky, was executed by the Gables Racing Assoc., and denied that the said alleged mortgage was an obligation of the Association or a lien upon the property described in the mortgage, but admitted that the Gables Racing Assoc., at the time of the filing of the answer, was in possession of the real estate described in the mortgage.

Testimony on the issues made by the pleadings was taken before the chancellor and a number of Exhibits

were offered in evidence by plaintiff below, and many of the Exhibits and much of the testimony were admitted for the purpose of the record, and the court reserved its ruling thereon, subject to a motion to strike. Later the motion to strike certain of plaintiff's testimony and Exhibits was by the lower court overruled and extended argument on final hearing was had.

On June 5, 1936, the chancellor entered an order permitting or allowing the plaintiff below to amend the bill of complaint to conform to said proof, and in the same order the motion to strike certain testimony and Exhibits of the plaintiff was denied. From the order denying the motion to strike the testimony and Exhibits and allowing the filing of the amended bill to conform to proof and the order overruling the motion to dismiss, a second appeal was perfected to this Court. The order entered by the lower court: (a) denying the motion to dismiss; (b) denying the motion to strike testimony and Exhibits of plaintiff; and (c) allowing the filing of the amended bill so as to conform to the proof, was affirmed by this Court. See Gables Racing Assoc., Inc. v. Persky, 131 Fla. 842, 180 So. 24.

The Gables Racing Assoc., Inc., after the return of the mandate on the second appeal, filed its answer to the re-amended bill raising in part issues viz: (1) the note and mortgage sought to be foreclosed as the obligations of Gables Racing Assoc., Inc., were not its instruments but were forgeries; (2) that Samuel Kantor was not the President, or Rose Kantor, his wife, the Secretary, or officer or agents of Gables Racing Assoc., Inc., and were without authority to bind the Association or mortgage its real estate; (3)

that Simon Persky and Samuel Kantor were joint adventurers; (4) that Samuel Kantor and Emmett Choate were joint adventurers; (5) that the money advanced by Persky was to Samuel Kantor, personally, and not to Gables Racing Assoc., Inc., (6) that Simon Persky never owned a lien against the real estate of Gables Racing Assoc., Inc., either as a conventional instrument or evidence of an equitable lien; (7) if Simon Persky was the owner of an equitable lien, the same was lost and is not now enforceable because they failed to assert their claim or record their lien or advise innocent parties then expending money upon the appearance and status of the record of Dade County, Florida.

The case came on to be heard on final hearing on the testimony previously taken and Exhibits offered by the plaintiff before the chancellor and the re-amended bill of complaint to conform thereto, and the testimony of the defendant and Exhibits in support of its answer to the re-amended bill. The chancellor below found the equities to be with the plaintiff and decreed that the plaintiff's note and mortgage were valid and enforceable as an equitable lien against the interests of the Gables Racing Assoc., Inc., in the race track property described in the mortgage; and further decreed that the property be sold to satisfy the unpaid principal, interest, attorneys fees, and court costs, and from the final decree the case makes its appearance here for the third time.

The assignments of error argued on this appeal are based on the different provisions of the final decree and the order dated May 25, 1939, overruling the petition of Gables Racing Assoc., Inc., for a rehearing. In the second appeal this court upheld the ruling of

the lower court in permitting and allowing amendments to the amended bill containing a prayer to the effect that if the court shall find that the note and mortgage are unenforceable as formal conventional instruments that the court may decree that Robert Persky have an equitable mortgage lien upon the real property described in said note and mortgage.

The Court, in Gables Racing Assoc., Inc. v. Persky, *supra*, 131 Fla. text pages 846-47, said:

"The re-amended bill is rather verbose and contains matters that are not altogether necessary, but it does not appear that the chancellor erred in holding that 'and the court finds that the allegations of said proposed amendment to plaintiff's bill conform substantially to the proof heretofore submitted to the court herein, and that the plaintiff's said amendment to his amended bill should be permitted to be filed, to conform to the evidence taken before the court and the exhibits filed herein, in order to do justice between the parties and to avoid unnecessary litigation and in order that the entire matter may be disposed of in this suit;' etc. But changing the bill so that the court might enforce it as an equitable mortgage or lien and a prayer to that effect is not a new and different cause of action and the chancellor correctly allowed such an amendment in view of the fact that he allowed further pleadings on the part of the defendant.

"The court has examined the exhibits and testimony objected to by defendant in his motion to strike. We are inclined to agree with the chancellor below in saying, 'the plaintiff's testimony and exhibits are not wholly immaterial or irrelevant to plaintiff's bill and said amendments thereto.' " . . .

"Some of the grounds of the motion to dismiss, raise close and difficult questions, but it does not clearly appear that the chancellor's rulings were erroneous. We find therefore that the chancellor should be affirmed in his ruling on these two motions, and it is so ordered. Remanded for further proceedings not inconsistent with this holding."

The amended bill of complaint to conform to the testimony and exhibits offered by the plaintiff was fully approved by this Court in the case *supra*. On April 12, 1935, the Gables Racing Assoc., Inc., at the close of the taking of testimony in chief by the plaintiff below, filed a motion consisting of approximately 20 pages and containing 43 separate grounds, and said grounds possessed a number of subdivisions, and the motion was for the purpose of striking described testimony and exhibits offered by the plaintiff. It appears that the motion was directed to and applied to practically, if not all, of the testimony and exhibits offered in chief by the plaintiff. This motion was overruled and denied by the lower court and on appeal here was affirmed. See Gables Racing Assoc., Inc. v. Persky, 131 Fla. 842, 180 So. 24. It is necessary now to consider all the testimony and exhibits adduced on the part of Gables Racing Assoc., Inc., and then determine from all the evidence offered by the parties whether or not there is error in the record and final decree. The controversy here, as disclosed by the record, consists of disputed and conflicting issues of fact.

The testimony shows that H. J. Spurway, Receiver, on July 7, 1931, pursuant to an order of the Federal District Court, executed a deed to Gables Racing Association, Inc., conveying the land involved in this

suit. The consideration for the property was $5,000.00 in cash and a purchase price mortgage in the total sum of $15,000.00. The mortgage and the two notes in the sum of $7,500.00 each were signed by Gables Racing Assoc., Inc., by Emmet C. Choate, president, and attested by R. Gordon, secretary. The check in the sum of $5,000.00 was signed by the same company and officers and dated July 8, 1931, and drawn on the First National Bank of Miami. The purchase price mortgage was recorded and subsequently paid. Samuel Kantor, on July 8, 1931, deposited to the credit of Gables Racing Assoc., Inc., the sum of $5,100.00 and the initial payment on the land was drawn on this account.

The basis of the suit at bar is a note in the sum of $15,000.00 and a mortgage securing the same, each dated July 20, 1931, and payable to the Nator Holding Company and signed by Gables Racing Assoc., Inc., by Samuel Kantor, president, and Rose Kantor, secretary, and a scroll used as a seal, and embraced the lands described in the conveyance from Spurway to Gables Racing Assoc., Inc. "The mortgage was not recorded until March 4, 1932." The mortgage was drafted by Miami attorneys representing Simon Persky and was to secure the payment of an indebtedness due him by Samuel Kantor, and it asserted that the money obtained by Samuel Kantor from Simon Persky financed in part the purchase of the twenty-five acres of land from Spurway, Receiver, to Gables Racing Assoc., Inc. The minutes of the Gables Racing Assoc., Inc., were written by Mr. Choate and retained in his office. The stock of the Company as issued was in the name of Rose Kanor and Choate. Application for a racing permit in behalf of the Gables Racing Assoc.,

Inc., through attorney Choate was made and ulti-
mately issued.

The Bruen interests became interested in and later
purchased the entire holdings of Gables Racing
Assoc., Inc., and approximately $500,000.00 additional
stock issued by the corporation and additional lands
purchased and the track developed. The public
records were carefully examined, the minute books
and other papers of Gables Racing Assoc., Inc., were
studied and investigated. The minutes of the corpo-
ration dated August 3, 1931, and identified as plain-
tiff's Exhibit No. 70, as prepared by Mr. Choate, were
altered or changed by counsel for the Bruen interests.
The Bruen interests, after the purchase of the Gables
Racing Assoc., Inc., interests, continued to operate
under the charter of the Gables Racing Assoc., Inc.,
and expended thousands of dollars in the completion
of the racing plant and takes the position that it is
inequitable to permit or allow the endorsement of the
non-recorded mortgage given by the Gables Racing
Assoc., Inc., through its officers Samuel Kantor, presi-
dent, and wife, Rose Kantor, secretary. Several hun-
dred pages of testimony was taken and the same has
been carefully read, studied and considered by this
Court. There is a presumption of the correctness of
the ruling of the lower court and the burden of
showing error rests on the party asserting that error
was committed. See Britt v. State, 88 Fla. 482, 102
So. 761; State v. Merritt, 86 Fla. 164, 99 So. 230;
Hoodless v. Jernigan, 51 Fla. 211, 41 So. 194;
Clements v. State, 51 Fla. 6, 40 So. 432; Stover v.
Stovall, 103 Fla. 284, 137 So. 249.

It is our conclusion that the testimony of the
respective parties adduced at the trial presented

purely conflicting and disputed questions of fact for the chancellor to determine. We cannot by a study and conscientious consideration of all the testimony and exhibits, say that the chancellor abused his discretion by entering the final decree assigned as error. We are not authorized under the law to substitute our views or conclusions on the facts for the findings of the chancellor in the absence of a showing of abuse of discretion. We cannot on this record hold that the chancellor misinterpreted the probative force or the weight of the testimony or was guided by considerations *dehors* the record.

The findings of a chancellor based on conflicting evidence will not be disturbed unless they are clearly shown to be erroneous. See Meola v. Sparks, 138 Fla. 364, 189 So. 408; Cuno Corporation v. Lamb, 138 Fla. 773, 190 So. 246; Durham v. Durham, 137 Fla. 506, 188 So. 609; Gross v. Hammond, 138 Fla. 20, 188 So. 789.

The decree appealed from is hereby affirmed.

WHITFIELD, C. J., and CHAPMAN, J., concur.

BROWN, J., concurs in conclusion.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Sec. 4637 Comp. Gen. Laws of 1927 and Rule 21-A of the Rules of this Court.

## ON REHEARING

ADAMS, J.—This case is in this Court the third time. The first appeal, Persky v. Gables Racing Assoc., Inc., 156 So. 392, the second appeal, Persky v. Gables Racing Assoc., 180 So. 24, and now on rehearing.

It was instituted as a suit to foreclose a mortgage. After taking considerable testimony that theory was practically abandoned and the bill was remanded to foreclose the same alleged debt as an equitable lien. This theory of the case was approved, if proven, on the second appeal. We are now satisfied also from the evidence and pleadings the mortgage was not the defendant's mortgage.

We are now concerned only with the sufficiency of the evidence to establish an equitable lien.

It is difficult if not unwise to attempt a definition of an equitable lien. Difficult because of the variety of circumstances out of which it may arise. Unwise because we must not draw a limit on the scope of equity jurisdiction. This Court, however, has recognized equitable liens: Pratt v. Weeks, 1 F. Supp. 953; International Realty Associates v. McAdoo, 87 Fla. 1, 99 So. 177; Craven v. Hartley, 102 Fla. 282, 135 So. 899; Folsom v. Farmer's Bank of Vero Beach, 102 Fla. 899, 136 So. 524; Jones v. Carpenter, 90 Fla. 407, 106 So. 127; 43 A.L.R. 1409. In Jones v. Carpenter *supra* this Court in an opinion by Mr. Justice TERRELL, after reviewing a number of cases said:

"From the foregoing it is seen that equitable liens arise from two sources, viz: (1) A written contract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case."

What then is there in the plaintiff's case here to entitle him in right and justice to equitable relief as against the property here involved?

The plaintiff having come to a court of equity for relief must himself and those in privity with him be free of any inequitable conduct relative to the controversy.

Simon Persky became interested in this transaction about March 1931, when one Kantor offered in consideration of $15,000 to give Persky 51% of the stock in a dog track which was to be purchased outright and in full for the $15,000. Persky was to place his son on the track to take in the cash and when his money was repaid he would retain his 51% of the stock. In the meantime, Persky was to take a third mortgage as additional security on the Mayflower Hotel. To accomplish this deal Persky consulted his attorneys. See Persky's testimony, page 150. This deal never materialized.

Persky returned from Miami, Florida, to New Haven, Conn., and Kantor came to see him in June of 1931 with another proposition to-wit:

That Persky was to loan $15,000 to purchase another race track. In return Persky was to have his son, the plaintiff, remain in the Mayflower Hotel which belonged to one of Kantor's companies until the debt was paid. Persky was to get a third mortgage by Nator Holding Company on the Mayflower Hotel for $19,000 and a second mortgage on the race track as additional security for $15,000. Transcript of record, Persky, page 152. Without executing any papers Persky advanced $7,000 to Kantor, took certain papers from Kantor and transmitted them to his, Persky's, attorneys by letter. See plaintiff's exhibit No. 56, dated June 30, 1931. Persky relied thereafter entirely on his attorneys, to protect his interest.

It then appears that Persky's attorneys received

the letter of transmittal and handled the business for Persky.

Persky's attorneys, in collaboration with Kantor, prepared the note and mortgage upon which the original bill herein was based. The corporate records of Gables Racing Assoc., Inc., were not had to ascertain whether the purported officers were authorized to involve the corporation with debt. No abstract was procured to see if the mortgagor had a good title. It is clear from the testimony that Persky's attorneys "trusted Kantor too much." He relied on Kantor for all data relative to the title of the property; the officers of the company, its charter and powers. He said he thought no harm could come inasmuch as the money had not been disbursed. He evidently overlooked his client's letter, exhibit No. 56, informing him that $7,000 had already been advanced to Kantor. Transcript, p. 219. Neglect, if any, of the plaintiff's attorneys is chargeable to plaintiff.

We see therefore that Persky and his attorneys entrusted Kantor to take the money and use same or a part of same to consummate the proposed deal. In fact the company and its property sought to be charged only got the benefit of $5,100 which amount was returned by the company long before its officers or agents learned of the claim of Persky.

Considering this case as we now are solely on the theory of an equitable lien the failure to file for record the alleged mortgage becomes material.

The chancellor correctly found that no record was necessary as between the parties to a mortgage foreclosure. Here, however, the mortgage theory is out of the case and another rule applies. Jones v. Carpenter, *supra*.

"An equitable lien is not an estate or property in the thing itself nor a right to recover the thing; that is, a right which may be the basis of a possessory action. It is simply a right of a special nature over the thing, which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action."

The failure to record the mortgage while other interest intervened is material just as any failure to assert or give notice of a claim while the property sought to be charged was being enhanced is material. While the mortgage is void, it is not void on its face and plaintiff could have recorded it. His failure to place it on record deprived the defendants of notice. Without material conflict the facts are, the alleged mortgage was taken without inquiry at any time of the names of the officers of the mortgagor; without a search of title except to telephone an abstract company and then did not inquire what officers executed the first mortgage. No examination of the corporate records was made.

The second mortgage of $15,000.00, was taken with full knowledge that the mortgaged premises were being purchased for $20,000; that the vendor was taking a first lien of $15,000.00, with full knowledge that the personnel of the officers of the corporation were changing completely; that the officers of the corporation had no notice of the plaintiff's claim; with full knowledge that valuable improvements were being made and would necessarily have to be made in order to enhance the value of the property sufficiently to pay the first and second liens.

For Persky and his privies to remain quiet and withhold from record the alleged mortgage while all

this was transpiring we think in right and justice silences the plaintiff for all time. 4 Pomeroy 3424, Sec. 1443.

"The delay of a party holding an equitable right to property who has permitted another holding a legal right to extend large sums of money to improve the property and enhance the value, which probably would not have been done if the right had been properly asserted, usually is guilty of such laches as to preclude relief."

"Equity will not permit such party to stand by and permit the party who owns the legal title to improve the property until it becomes valuable and then assert it."

We recognize the Racing Company as a separate legal entity. Persky and his attorneys used Kantor as a conduit to transmit the money into the Racing Company and by the same avenue the Racing Company returned the money but unfortunately it did not reach the point of origin.

Persons dealing with corporations are required to take notice of the authority of those attempting to act for the corporation.

We are dealing here not with a debt of the corporation or a mortgage or statutory lien. It is a right granted by a court of equity, arising by reason of the conduct of the parties affected which would entitle one party as a matter of equity to proceed against the property. Jones v. Carpenter, *supra*:

"Equitable liens are necessarily based on the doctrine of estoppel and usually arise in cases of expenditures by one joint owner on real or other property or in cases where a party innocently and in good

faith makes improvements on the property of another."

Judging the conduct of the parties and their privies by equitable rules we find no neglect on the part of the Racing Company and no act which would mislead the plaintiff or those in privity with him.

The only attempt to charge an officer of the Racing Company with a wrongful act or notice of claim is to Kantor. This is fallacious as he was never an officer of the Company as shown by the evidence and the plaintiff in effect admits this by abandoning his mortgage theory. To uphold this decree will compel the defendant to pay that which it does not owe, never did benefit by, but to the extent of $5100, and as to that amount it repaid. The contract leaves Persky his action against Kantor and Nator Holding Company with security. 19 Am. Juris. 484:

"Where a prejudicial situation results from a wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongful act, either by fraud or negligence."

The appellee earnestly insists that this Court in the last appeal settled the case presented here adversely to appellant. Such is not the case. All of the evidence and the final decree of the chancellor on the evidence was not before the Court on the second appeal.

Without discussing the evidence further, we have concluded from a consideration of the evidence that the decree is contrary to the legal effect of the evidence. Lightsey v. Washington Park Prop., 112 So. 555; Carr v. Leslie, 74 So. 207; Florida National Bank v. Sherouse, 86 So. 279; McGill v. Chappelle, 71 So. 836.

Our former opinion and judgment is hereby vacated and the decree is reversed, and the bill should be dismissed at the cost of the plaintiff.

WHITFIELD, TERRELL, and BUFORD, J. J., concur.

BROWN, C. J., dissents and adheres to original judgment of affirmance.

CHAPMAN, J., dissents.

## ON REHEARING

BUFORD, J., concurring specially.—I concur in what has been said in the opinion by Mr. Justice ADAMS but wish to say further:

When plaintiff amended its bill of complaint it practically abandoned the theory that it held a mortgage lien and proceeded on the theory that plaintiff was entitled to have impressed and foreclosed an equitable lien upon the property described in the mortgage. On review of the order allowing the amendment we said:

"The reamended bill is rather verbose and contains matters that are not altogether necessary but it does not appear that the chancellor erred in holding that 'and the court finds that the allegations of said proposed amendment to plaintiff's bill conform substantially to the proof heretofore submitted to the court herein, and that the plaintiff's said amendment to his amended bill should be permitted to be filed, to conform to the evidence taken before the court and the exhibits filed herein, in order to do justice between the parties and to avoid unnecessary litigation and in order that the entire matter may be disposed of in this suit;' etc. But changing the bill so that the court might enforce it as an equitable mortgage or

lien and a prayer to that effect is not a new and different cause of action and the chancellor correctly allowed such an amendment in view of the fact that he allowed further pleadings on the part of the defendant. The court has examined the exhibits and testimony objected to by defendant in his motion to strike. We are inclined to agree with chancellor below in saying, 'the plaintiff's testimony and exhibits are not wholly immaterial or irrelevant to plaintiff's bill and said amendments thereto.'

"The second order of the chancellor assigned as error on this appeal is the order appearing on page 322 of the transcript which denies the motion of the defendant to dismiss the amendment to plaintiff's bill and allows defendant until July 15, 1936, within which to file such other or further answer as it may be advised to plaintiff's bill as amended.

The defendant assigned twenty-seven grounds for dismissing the amendment. We have examined the amendment carefully and do not find that the chancellor erred in refusing to grant the motion. The case is not before the court on its merits but is merely an appeal from the two orders of the chancellor. The chancellor allowed additional time within which to plead and so the case is still open for further pleading and the taking of additional testimony.

Some of the grounds of the motion to dismiss raise close and difficult questions, but it does not clearly appear that the chancellor's rulings were erroneous. We find, therefore, that the chancellor should be affirmed in his ruling on these two motions, and it is so ordered. Remanded for further proceedings not inconsistent with this holding." See Gables Racing Assoc., Inc., v. Persky, 131 Fla. 842, 180 Sou. 24.

It is one of the contentions of appellee that this Court settled the law of the case and determined the rights of the parties in the opinion and judgment, *supra*.

This contention is contrary to the record. At most, we held in that opinion that the plaintiff should be allowed to amend as indicated and that under the pleadings as thus amended and the proof theretofore submitted he might be able to enforce an equitable lien for some amount. But when the thus re-amended bill of complaint had been answered and all the testimony had been taken and presented, it was shown conclusively:

(a) That the note and mortgage executed in the name of Gables Racing Association by Samuel Kantor, president, on July 20, 1931, to Nator Holding Co., a corporation, in the sum of $15,000.00 was *ultra vires* and void as the obligation of the corporation Gables Racing Assoc., Inc., because (1) neither the note nor the mortgage was signed in the name of the corporation. The name of the corporation was "Gables Racing Assoc., Inc." The name signed to the papers was Gables Racing Association. (2) There was no authority granted by the corporation to any one to make and execute such a mortgage and note; (3) Kantor was not president or any other officer of the corporation at the time he pretended to execute the note and mortgage in the pretended name of the corporation. (4) The note and mortgage were executed in a name other than the corporate name by one who was not an officer of the corporation and not under the corporate seal. (5) The pretended note and mortgage were for the sum of $15,000 when, if the corporation owed to the payee anything at all it was

no more than $5100.00; (6) The mortgage and note were executed and delivered by Kantor without even the knowledge of Choate who was then president of Gables Racing Assoc., Inc., and was then the officer authorized to execute papers.

It, therefore, follows that if plaintiff was entitled to have impressed and enforced a lien for any amount at all he was limited to an equitable lien to enforce the payment of the amount of money advanced to or received by Gables Racing Assoc., Inc., and no more.

The record shows that Nator Holding Co. was a corporation principally owned and controlled by Kantor and that when Kantor executed the mortgage in the name Gables Racing Association to Nator Holding Co., he did that for the sole purpose of placing that security in the hands of Nator Holding Co., to be assigned to Simon Persky for an obligation which Nator Holding Co., or Kantor, or both, owed Persky pursuant to an agreement between Kantor and Persky that Persky would loan Kantor a certain sum of money and take as security a mortgage from Nator Holding Co., in the sum of $19,900.00 and another mortgage as collateral security from Gables Racing Assoc., Inc., for $15,000.00. Pursuant to this agreement, on June 30, 1931, Persky advanced to Kantor the sum of $7,000.00 in two checks, one for $5100.00 and the other for $1900.00 and thereafter advanced other sums to Kantor. The proceeds of the $5100.00 check was credited to the First National Bank of Miami by National City Bank of New York to be paid to Coral Gables Racing Association, Emmett C. Choate, treasurer, for the account of Samuel Kantor by direction of First National Bank & Trust Co., of

New Haven, Conn. Five Thousand dollars ($5000) of this money was used to make the cash payment for a conveyance of the lands purchased from Spurway, receiver, by Gables Racing Assoc., Inc. The balance of the purchase price, the balance being $15,000.00, was evidenced by notes and mortgage of Gables Racing Assoc., Inc., to Spurway, receiver. When Bruen and his associates purchased Gables Racing Assoc., Inc., and the stock was transferred from Choate and others to Bruen and his associates, Bruen and his associates paid the $5000.00 originally paid as stated, *supra*, and assumed the notes and mortgage for the balance of the purchase price which was afterwards paid.

Neither the mortgage executed by Kantor in the name of Gables Racing Association to Nator Holding Co., nor the assignment thereof to Simon Persky, nor the assignment from Simon Persky to Robert Persky was recorded until March 9, 1932, which was long after the sale and transfer of Gables Racing Assoc., Inc., to Bruen and his associates. From this it is seen that when Bruen and his associates repaid to Kantor the $5000.00 which he claimed to have paid on the purchase price of the property they paid the same without any knowledge that he had assigned his right to receive that money and thereby discharged any equitable lien which may have existed on account of the furnishing of that money for the purchase price of the property.

In view of the above stated facts, it is now my conclusion (a) that the alleged mortgage, foreclosure of which was originally sought, and the note which it was given to secure were *ultra vires* and void as the obligation of Gables Assoc., Inc., (b) that if the trans-

action brought into being an equitable lien in favor of Nator Holding Co., or of Samuel Kantor it secured no more than $5100.00 that being the total amount received by or used for the benefit of Gables Racing Assoc., Inc., (c) that the equitable lien, if any, was discharged when Bruen and his associates paid to Kantor, Choate and his associates the amount which they had paid on purchase price of the property, including the capital stock of Gables Racing Assoc., Inc., there then being no record of any assignment or lien of any sort from that corporation to Kantor or to his other corporation Nator Holding Co., or to Persky.

My conclusion is further that the chancellor did not reach his decree by a finding of fact based upon conflicting evidence, but that his decree was based upon a misapprehension of the law applicable to the facts of this case as shown by the great preponderance of the evidence if not without conflict.

BROWN, C. J., dissenting.—Applying "the law of the case" as established on the two former appeals in this cause (166 Fla. 77, 156 So. 392; 131 Fla. 842, 180 So. 24) I think we should adhere to our original judgment of affirmance heretofore rendered on this third appeal.